Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-165[1]

| | | |
|---|---|---|
| BANCRÉDITO HOLDING CORP.<br><br>Querellante-Recurrente<br><br>v.<br><br>DRIVEN ADMINISTRATIVE SERVICES, LLC<br>(Síndico para Bancrédito International Bank & Trust)<br><br>Querellado-Recurrido<br><br><br>Oficina del Comisionado de Instituciones Financieras<br><br>Agencia Recurrida | KLRA202300487 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina del Comisionado de Instituciones Financieras<br><br><br>Querella Núm.:<br><br>Q23-D-034 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Pérez Ocasio y el Juez Cruz Hiraldo.

Juez Ponente, Cruz Hiraldo

### SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

Comparece la parte recurrente, Bancrédito Holding, Corp. (en adelante, "BHC"), para solicitarnos que se revise y revoque la *Resolución* emitida el 21 de junio de 2023 y notificada el 23 de junio de 2023 por la Oficina del Comisionado de Instituciones Financieras (en adelante, "OCIF"), en la cual desestimó la *Querella* presentada por BHC.

Por los fundamentos que exponemos a continuación, se confirma la *Resolución* recurrida.

---

[1] Mediante la Orden Administrativa OATA-2023-165 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Ivelisse Domínguez Irizarry.

I

El presente caso es una secuela del caso núm. KLRA202300034.[2] Bancrédito International Bank and Trust Corporation (en adelante, "BIBTC") está en un proceso de cierre y liquidación ante la OCIF. A estos fines, el 9 de agosto de 2022, BIBTC y la OCIF acordaron subscribir un plan de liquidación, titulado *"Plan of Liquidation and Dissolution of Bancredito International Bank & Trust Corporation"* (en adelante, "Plan de Liquidación"). El propósito del Plan de Liquidación era disolver y liquidar a BIBTC, junto a los procedimientos correspondiente que conllevaría. Como parte del Plan de Liquidación, Driven Administrative Services, LLC (en adelante, "Driven"), fue asignado como administrador de los procedimientos.

Ante incumplimientos por BIBTC con el Plan de Liquidación, el 11 de enero de 2023, la OCIF presentó una *Querella y Orden de Nombramiento Provisional y Permanente de Síndico y Revocación de Licencia.* La OCIF nombró provisionalmente a Driven como Síndico y solicitó que se ordenara la liquidación de BIBTC, que se designara a Driven como Síndico permanente y que se revocara la licencia de BIBTC como entidad bancaria internacional. El 18 de enero de 2023, BHC presentó una *Solicitud Urgente de Intervención* para poder intervenir en los procedimientos como único accionista de BIBTC. La OCIF no objetó y el Oficial Examinador autorizó la intervención. BHC procedió a impugnar la designación de Driven como Síndico.

Luego de varios trámites procesales, negociaciones y una vista administrativa, BHC, la OCIF y Driven, como administrador de BIBTC, llegaron a un acuerdo transaccional, titulado *Settlement*

---

[2] En dicho caso, este Tribunal de Apelaciones atendió un recurso de revisión judicial presentada por BHC en cuanto a la *Querella y Orden de Nombramiento Provisional y Permanente de Síndico y Revocación de Licencia* presentada por la OCIF, como relataremos más adelante. No obstante, la misma fue desestimada por falta de jurisdicción al no haber una determinación final.

*Agreement,* para poner fin a las controversias de la querella y continuar con el proceso de liquidación. BHC y Driven firmaron el acuerdo el 10 de marzo de 2023 y la OCIF firmó el 13 de marzo de 2023.

Entre otras cosas, las partes acordaron, en lo pertinente, lo siguiente: 1) Driven sería el Síndico permanente hasta que se logre la liquidación de BIBTC; 2) cuáles serían los términos y condiciones para la transferencia de fondos para la liquidación; 3) que el Síndico tendría discreción absoluta para escoger la institución financiera o agencia de escrow ("*Escrow Agent*"), en la cual se abrirá una cuenta ("*Escrow Account*") y recibirá los fondos a transferirse para los propósitos de la liquidación; y 4) que la selección del *Escrow Agent* deberá cumplir con una serie de requisitos, entre ellos que el *Escrow Agent* sea una agencia o institución financiera reputada como Royal Bank of Canada o similar a esta y que dicha selección estará sujeta a la determinación de no-objeción de la OCIF.

Mediante el *Settlement Agreement* se resolvieron las controversias que quedaban pendientes y el Oficial Examinador desestimó sin perjuicio la querella presentada por la OCIF. Así las cosas, Driven, como Síndico permanente, escogió a Apex Corporate Trustees (UK) Limited (en adelante, "Apex") como *Escrow Agent* y a Lloyds Bank Plc. (en adelante, "Lloyds Bank") como institución financiera en donde se abriría el *Escrow Account.* Driven cursó varias misivas a la OCIF donde le informó de su selección, proveyó la información sobre los distintos candidatos y fundamentó su decisión. El 15 de marzo de 2023, la OCIF contestó las misivas y notificó su determinación de no-objeción a la selección de Apex como *Escrow Agent.* Ante ello, Driven contrató a Apex como *Escrow Agent* y abrió un *Escrow Account* en Lloyds Bank.

El 29 de marzo de 2023, Driven envió un correo electrónico a las instituciones financieras involucradas y a BHC con instrucciones para la transferencia de fondos, conforme a lo establecido en el *Settlement Agreement*. Sin embargo, BHC se negó a completar las transferencias y objetó la selección por Driven del *Escrow Agent* y de la apertura del *Escrow Account*. En síntesis, BHC entendía que Apex no cumplía con los requisitos del *Settlement Agreement*, particularmente que Apex no es una institución financiera similar a Royal Bank of Canada.

Así las cosas, el 11 de abril de 2023, BHC radicó una *Querella* en la OCIF en contra de Driven, alegando incumplimiento con el *Settlement Agreement*. En síntesis, BHC solicitó la resolución del *Settlement Agreement* por alegado incumplimiento por Driven y, en la alternativa, solicitó una vista administrativa en la que se autorizara un descubrimiento de prueba, se ordenara a Driven a cumplir sus obligaciones contractuales y se le impusiera multas administrativas. El 26 de abril de 2023, el Oficial Examinador le concedió un término a Driven a presentar su contestación a la querella y, por alegaciones de incumplimiento con el *Settlement Agreement*, un término a BIBTC y a la OCIF para expresarse y presentar sus alegaciones por formar parte del acuerdo.

El 16 de mayo de 2023, la OCIF presentó una *Solicitud de Desestimación*. La OCIF argumentó que sólo la agencia tenía la facultad de objetar la selección del *Escrow Agent*, según los requisitos dispuestos en el *Settlement Agreement*, y que esta no fue cuestionada en la *Querella*. Además, la OCIF señala que BHC no hizo alegación alguna sobre su determinación de no-objeción, particularmente que fuera arbitraria, caprichosa o irrazonable, por lo que debe desestimarse la *Querella* por ser improcedente en derecho. El 19 de mayo de 2023, Driven presentó una *Contestación a Querella, Reconvención y Solicitud de Sanciones por Temeridad* en

donde se unió a los argumentos de la OCIF y añadió que del *Settlement Agreement* surge que Driven tenía absoluta discreción y autoridad para seleccionar al *Escrow Agent* y la apertura del *Escrow Account*. Por último, Driven reconvino y solicitó sanciones por temeridad debido a que BHC paralizó el proceso de liquidación al obstaculizar la transferencia de fondos, contrario a lo acordado en el *Settlement Agreement*.

El 21 de junio de 2023, notificada el 23 de junio de 2023, el Juez Administrativo emitió una *Resolución* donde desestimó la Querella por inmeritoria. El Juez Administrativo se acogió a los argumentos presentados por la OCIF y Driven en cuanto a que BHC nunca cuestionó la determinación de no-objeción de la OCIF ni mencionó que el proceder fuese arbitraria, caprichosa o irrazonable. El 10 de julio de 2023, BHC presentó una *Moción de Reconsideración*. El Juez Administrativo acogió la moción de reconsideración y, el 16 de agosto de 2023, notificada el mismo día, reafirmó su postura mediante *Resolución en Reconsideración*.

Inconforme, el 14 de septiembre de 2023, BHC presentó un *Recurso de Revisión Judicial* ante nos con los siguientes señalamientos de error:

1. ERRÓ LA OCIF AL DICTAR UNA RESOLUCIÓN DESESTIMANDO SUMARIAMENTE LA QUERELLA DE BHC EN VIOLACIÓN DEL DEBIDO PROCESO DE LEY AL NO PERMITIR LA NECESARIA VISTA ADMINISTRATIVA Y EL CORRESPONDIENTE DESFILE DE PRUEBA PARA DECIDIR DE FORMA INFORMADA SOBRE LOS MÉRITOS DE LA QUERELLA Y LOS ASUNTOS EN CONTROVERSIA.

2. ERRÓ LA OCIF AL DICTAR UNA RESOLUCIÓN DESESTIMANDO SUMARIAMENTE LA QUERELLA DE BHC EN VILACIÓN DEL DEBIDO PROCESO DE LEY AL EXCEDERSE EN SU ROL DE JUEZ Y PARTE EN EL PROCEDIMIENTO ANTE SÍ.

3. ERRÓ LA OCIF AL DICTAR UNA RESOLUCIÓN DESESTIMANDO SUMARIAMENTE LA QUERELLA DE BHC EN BASE A HECHOS PARCIALES Y ERRÓNEOS Y SIN VERIFICAR ADECUADAMENTE

EL INCUMPLIMIENTO POR EL SÍNDICO DE LA CLAÚSULA 2 DEL *SETTLEMENT AGREEMENT.*

Comparecido las partes y presentado sus escritos, damos por perfeccionado el recurso de epígrafe. Examinado el expediente en su totalidad, procedemos a exponer el derecho aplicable y resolver.

## II

### A. *Estándar de Revisión Judicial*

El objetivo principal de la revisión judicial se enfoca en garantizar que las agencias administrativas actúen conforme a las facultades concedidas por ley.[3] Constituye una norma reiterada por el Tribunal Supremo de Puerto Rico que los tribunales apelativos deben conceder deferencia a las determinaciones de las agencias administrativas por la experiencia y conocimiento especializado que éstas poseen sobre los asuntos ante su consideración y que por ley se les ha delegado.[4] Por ello, las determinaciones de las agencias administrativas gozan de una presunción de legalidad y corrección que los tribunales deben respetar mientras que no se presente evidencia suficiente para superarla o invalidarla.[5]

La parte que impugna judicialmente una determinación de hecho de una agencia administrativa tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó son irrazonables.[6] Conforme a lo dispuesto en la Sección 4.5 de la Ley Núm. 38-2017 (en adelante,

---

[3] *Hernández Feliciano v. Mun. de Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *Oficina de Ética Gubernamental v. Martínez Giraud*, *209 DPR 79, 88 (2022)*.

[4] *Hernández Feliciano v. Mun. de Quebradillas*, *supra*; *Oficina de Ética Gubernamental v. Martínez Giraud*, *supra*, pág. 89; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).

[5] *Capó Cruz v. Junta Planificación et al.*, 204 DPR 581, 591 (2020).

[6] *González Segarra et al. v. CFSE*, 188 DPR 252, 276–278 (2013); *OCS v. Universal*, 187 DPR 164, 178–179 (2012).

"LPAU")[7], las determinaciones de hechos de una agencia del Gobierno "se sostendrán si se fundamentan en evidencia sustancial que obre en el expediente administrativo."[8] A estos fines, el Tribunal Supremo ha establecido que la evidencia sustancial es "aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[9] Empero, la aceptación no puede estar sostenida por un ligero destello de evidencia o por simples inferencias.[10]

Ahora bien, el criterio rector al momento de pasar juicio sobre la decisión de un foro administrativo es la razonabilidad de la actuación de la agencia, luego de considerar el expediente administrativo en su totalidad.[11] Consecuentemente, la revisión judicial estará limitada a evaluar si la actuación de la agencia fue arbitraria, ilegal o irrazonable, constituyendo así un abuso de discreción.[12] De este modo, el alcance del proceso de revisión se ciñe a determinar: 1) si el remedio concedido por la agencia fue el apropiado; 2) si las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo, y; 3) si las conclusiones de derecho fueron las correctas.[13]

Por su parte, las determinaciones de derecho pueden ser revisadas en todos sus aspectos.[14] No obstante, la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo.[15] Los tribunales revisores

---

[7] Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA § 9675.

[8] *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009).

[9] *Capó Cruz v. Junta Planificación et al.*, *supra*, citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[10] *Oficina de Ética Gubernamental v. Martínez Giraud*, *supra*, pág. 90.

[11] *Oficina de Ética Gubernamental v. Martínez Giraud*, *supra*, pág. 89; *Torres Rivera v. Policía de PR*, *supra*, pág. 627; *Otero v. Toyota*, 163 DPR 716, 727 (2005).

[12] *Torres Rivera v. Policía de PR*, *supra*, pág. 626.

[13] *Id.*, pág. 627.

[14] *Oficina de Ética Gubernamental v. Martínez Giraud*, *supra*, pág. 90; *Capó Cruz v. Junta Planificación et al.*, *supra.*

[15] *Capó Cruz v. Junta Planificación et al.*, *supra.*

descartarán el criterio de los entes administrativos cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo.[16] En virtud de ello, los tribunales revisores descartarán el criterio de la agencia administrativa, en el cual cederá la deferencia administrativa, sólo cuando la agencia: 1) erró al aplicar la ley; 2) actuó arbitraria, irrazonable o ilegalmente, o; 3) lesionó derechos constitucionales fundamentales.[17]

Además, el criterio administrativo no podrá prevalecer cuando la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y la política pública que la promueve.[18] En ese sentido, la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.[19] Por ende, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable.[20]

Por último, cabe destacar que, en el ejercicio de la función revisora de los tribunales apelativos, los foros apelativos deben diferenciar entre asuntos de interpretación estatutaria, del cual los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa.[21]

**B. *Teoría General de Contratos***

Según ha establecido nuestra jurisprudencia, la teoría de los contratos se basa en la autonomía de la voluntad y la libertad que

---

[16] *Id.*; *Rolón Martínez v. Supte. Policía, supra*, pág. 36.
[17] *Id.*; *JP, Plaza Santa Isabel v. Cordero Badillo, supra.*
[18] *Oficina de Ética Gubernamental v. Martínez Giraud, supra*, págs. 90-91.
[19] *Moreno Lorenzo v. Dept. de la Familia*, 207 DPR 833, 843 (2021).
[20] *Id.*
[21] *Hernández Feliciano v. Mun. de Quebradillas, supra*; *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).

tienen las partes contratantes de acordar los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral ni al orden público.[22] Aquellas obligaciones que nacen de un contrato tienen fuerza de ley entre las partes.[23] Por tanto, cuando un contrato es legal, válido y carente de vicios del consentimiento, constituye la ley entre las partes y debe cumplirse a tenor de éste.[24]

Cónsono con nuestro ordenamiento jurídico, cuando los términos del contrato resultan ser claros, se hará valer el sentido literal de lo que disponen.[25] A estos efectos, los tribunales no deben recurrir a las reglas de interpretación ni a la hermenéutica cuando la intención de los contratantes y los términos son claros.[26]

## C. *Procedimientos Adjudicativos ante la OCIF*

La Ley Núm. 4 de 11 de octubre de 1985, según enmendada[27], creó la Oficina del Comisionado de Instituciones Financieras (OCIF). Dicha legislación facultó a la agencia administrativa a reglamentar sus propios procedimientos.[28] A estos efectos, la OCIF promulgó el Reglamento Núm. 3920 del Estado Libre Asociado (en adelante, "Reglamento"), de aplicación a los procedimientos adjudicativos que se ventilen en la OCIF, excepto aquellos procedimientos relativos a la administración interna.

Cabe destacar que, según lo dispuesto en la Sección 3.1 de la LPAU[29], en todo procedimiento adjudicativo formal ante una agencia administrativa se salvaguardarán los siguientes derechos:

---

[22] Art. 1232 del Código Civil de 2020, 31 LPRA § 9753; *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 286 (2021); *BPPR v. Sucn. Talavera*, 174 DPR 686, 693 (2008).
[23] Art. 1233 del Código Civil de 2020, 31LPRA § 9754.
[24] *Álvarez v. Rivera*, 165 DPR 1, 18 (2005).
[25] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC, supra*; *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1030 (2017).
[26] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC, supra*.
[27] Ley Núm. 4 de 11 de octubre de 1985, según enmendada, 7 LPRA § 2001 et seq.
[28] *Id.*, 7 LPRA § 2010(a).
[29] Sección 3.1 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *supra*, 3 LPRA § 9641.

1) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; 2) derecho a presentar evidencia; 3) derecho a una adjudicación imparcial; y 4) derecho a que la decisión sea basada en el expediente.

En vista de lo anterior, los oficiales examinadores que presiden sobre los procedimientos adjudicativos gozan de cierta flexibilidad en el manejo de los procesos. En cuanto a los mecanismos de descubrimiento de prueba, la Sección 3.8(a) de la LPAU dispone que:

> Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo. No obstante lo anteriormente dispuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia.[30]

Lo anterior establece que los mecanismos y procedimientos de descubrimiento de prueba solo se garantizarán en aquellos procedimientos de adjudicación promovidos a iniciativa de la agencia administrativa.[31] De lo contrario, como norma general, no serán de aplicación los mecanismos y procedimientos de prueba en los casos de adjudicación administrativa, excepto cuando así lo autorice el reglamento aplicable y el funcionario que presida sobre los procesos. En lo pertinente al caso ante nos, la Regla 8.1 del Reglamento de la OCIF establece que:

> En aquellos casos donde el procedimiento de adjudicación sea promovido a iniciativa de la Oficina, las partes podrán utilizar los mecanismos de descubrimiento de prueba.

> En todo otro caso, el oficial examinador podrá autorizar el uso de dichos mecanismos cuando estos

---

[30] Sección 3.8 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *supra,* 3 LPRA § 9648.
[31] *Id.*

> promuevan una solución justa, rápida y económica del caso.
>
> El oficial examinador tendrá plena facultad para regir la utilización de los mecanismos de descubrimiento de prueba.[32]

Además de reiterar lo antes expuesto por la Sección 3.8(a) de la LPAU[33], el Reglamento de la OCIF faculta al oficial examinador a autorizar los mecanismos de descubrimiento de prueba cuando estos promuevan una solución justa, rápida y económica del caso. En otras palabras, es una facultad discrecional del oficial examinador y sólo tendrá la obligación de utilizarlo cuando cumpla con el requisito antes esbozado.

En cuanto a la celebración de la vista administrativa, la Sección 3.7(a) de la LPAU establece lo siguiente:

> Si la agencia determina que es necesario celebrar una vista adjudicativa, podrá citar a todas las partes o sus representantes autorizados e interventores, ya sea por su propia iniciativa o a petición de una de las partes, a una conferencia con antelación a la vista, con el propósito de lograr un acuerdo definitivo o simplificar las cuestiones o la prueba a considerarse en la vista. [...][34]

De entrada, el referido estatuto establece dos facultades discrecionales de la agencia. La primera es la determinación de la agencia en si es necesario la celebración de una vista adjudicativa. De contestarse en la afirmativa, la agencia tendrá la siguiente facultad de citar a las partes a una conferencia con antelación a la vista.[35]

Por último, la OCIF tiene la autoridad de desestimar las querellas en cualquier etapa de los procedimientos. La Regla 5 del Reglamento de la OCIF establece que:

---

[32] Regla 8.1 de la Oficina del Comisionado de Instituciones Financieras del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 3920, Departamento de Estado, 23 de junio de 1989, pág. 5-6.

[33] Sección 3.8 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *supra.*

[34] Sección 3.7 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *supra,* 3 LPRA § 9647.

[35] *Id.*

> La Oficina podrá en cualquier momento, por iniciativa propia o a solicitud de parte, desestimar una querella por ser la reclamación una que no justifica la concesión de un remedio, por inmeritoria, por falta de jurisdicción o por cualquier otro fundamento que proceda en derecho.
>
> En caso de desestimarse una querella, la Oficina emitirá la orden correspondiente conforme a estas reglas.

**D. *Parcialidad en Procedimientos Administrativos***

La esencia de todo procedimiento adjudicativo, sea judicial o administrativo, está en la celebración de un litigio justo ante un juzgador imparcial de los hechos.[36] En *Comisionado de Seguros v. Real Legacy Assurance*[37], el Tribunal Supremo estableció los elementos a identificar para determinar si un oficial examinador o juez administrativo ha actuado con parcialidad y si procede su descalificación.

En primer lugar, ante una alegación de parcialidad en un procedimiento administrativo, se debe identificar sobre qué asunto es el que se aduce la existencia de parcialidad, pues, cuando el oficial examinador ha prejuzgado cuestiones o hechos específicos del caso, eso podría dar lugar a su descalificación.[38] En estos casos se evalúa "si del comportamiento que exhiba el oficial examinador se puede concluir que éste, previo a presentarse la prueba o durante el transcurso de los procedimientos, denota que con anterioridad al inicio del proceso había prejuzgado cuestiones específicas que inciden sobre la solución de la controversia".[39]

Para ello, es necesario que se evidencie un compromiso previo para obtener la determinada conclusión con relación a cuestiones específicas del caso.[40] No basta con que el juzgador estar meramente familiarizado con aspectos legales o fácticos generales del caso si por sí solo no se demuestra que el funcionario

---

[36] *Comisionado de Seguros v. Real Legacy Assurance*, 179 DPR 692, 713 (2010) citando a *Withrow v. Larkin*, 421 US 35, 46-47 (1975).
[37] *Comisionado de Seguros v. Real Legacy Assurance, supra.*
[38] *Id.*
[39] *Id.*
[40] *Id.*, pág. 714.

estaba predispuesto a emitir la determinada solución.[41] Tampoco es suficiente el demostrar una clara convicción del juzgador en cuanto a su interpretación de las disposiciones legales aplicables o de la política administrativa impuesta por la agencia.[42]

En segundo lugar, hay que tener en cuenta que las resoluciones de las agencias se consideran decisiones institucionales, por lo que la integridad del proceso se afianza ante el hecho de que son varios los funcionarios que intervienen en la solución de la controversia.[43] Por tanto, para lograr que se revierta la determinación final de la agencia es necesario demostrar que la parcialidad demostrada por el oficial examinador influyó lo suficiente como para subvertir la integridad del proceso adjudicativo.[44] Es decir, tiene que haber incurrido en un comportamiento de un grado tan alto de favoritismo o antagonismo que hace imposible la solución justa del caso.[45]

La objetividad e imparcialidad del juzgador administrativo puede ser cuestionada con éxito si demuestra que el prejuicio del juzgador contaminó el proceso a tal nivel que acarreó consecuencias fatales en la determinación final que en su día emita la agencia.[46] En esencia, la parte perjudicada puede solicitar la descalificación del funcionario que preside los procedimientos cuando éste se aparte de su función de juzgador de los hechos y actúe como acusador, subvierte la integridad del proceso o cuando se evidencia que ha prejuzgado cuestiones fácticas específicas.[47]

Ante una solicitud de esta naturaleza, el juzgador puede optar por descalificarse. De no recusarse de los procedimientos, la agencia evaluará si los fundamentos provistos por el promovente

---

[41] *Id.*
[42] *Id.*, págs. 713-714.
[43] *Id.*, pág. 714.
[44] *Id.*, págs. 714-715.
[45] *Id.*, pág. 715.
[46] *Id.*
[47] *Id.*

son meritorios o si procede desestimar la petición, cuya determinación formará parte del expediente administrativo.[48] La revisión judicial sobre esa denegatoria sólo procederá una vez la agencia adjudique el caso en sus méritos.[49]

### III

Como primer señalamiento de error, BHC indicó que se le violó el debido proceso de ley al no permitírsele una vista administrativa y el correspondiente desfile de prueba. Según surge de la *Querella*, BHC solicitó la vista administrativa con el propósito de iniciar y establecer un descubrimiento de prueba para poder confirmar sus alegaciones de incumplimiento de contrato en contra de Driven como Síndico de la liquidación. El recurrente descansó su argumento en que la Regla 8.1 del Reglamento de la OCIF[50] le garantiza los mecanismos de descubrimiento de prueba en los casos donde el procedimiento adjudicativo sea promovido a iniciativa de la agencia. En fin, BHC concluye que la OCIF no resolvió de forma informada sobre los méritos de la querella y los asuntos en controversia. No le asiste la razón.

Según establecimos anteriormente, la Sección 3.8 de la LPAU[51] regula los mecanismos de descubrimiento de prueba en las agencias administrativas. Ciertamente, como norma general se le garantiza a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia. En todo otro caso, tal como los procedimientos iniciados por un querellante que no es la agencia, no será de aplicación los procedimientos de descubrimiento de prueba a menos que el reglamento de la agencia lo autorice y el funcionario que preside lo permita. El anterior

---

[48] *Id.*, págs. 715-716.
[49] *Id.*, pág. 716.
[50] Regla 8.1 de la Oficina del Comisionado de Instituciones Financieras del Estado Libre Asociado de Puerto Rico, *supra.*
[51] Sección 3.8 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *supra.*

estatuto quedó consagrado en la Regla 8.1 del Reglamento de la OCIF[52]. Incluso, la referida regla añade que, en los casos no iniciados por la agencia, el oficial examinador tendrá plena facultad de utilizar los mecanismos de descubrimiento de prueba si estos promueven una solución justa, rápida y económica del caso.

La *Querella* objeto de esta revisión judicial fue presentada por BHC, el 11 de abril de 2023, en la OCIF en contra de Driven, alegando incumplimiento con el *Settlement Agreement*. Por ende, el procedimiento adjudicativo no fue iniciado por la agencia y BHC, como querellante, no goza de un derecho a los mecanismos de descubrimiento bajo la Sección 3.8 de la LPAU[53]. De lo contrario, nuestras agencias administrativas se convertirían en instrumentos para las expediciones de pesca. Ahora bien, el oficial examinador pudo haber autorizado los mecanismos de descubrimiento de prueba bajo la Regla 8.1 del Reglamento de la OCIF[54]. No obstante, según la *Resolución* de la OCIF, el Juez Administrador entendió que autorizar dichos mecanismos resultarían en una dilación innecesaria y que no promovían una solución justa, rápida y económica. Además, los documentos que obran del expediente resultaron ser suficientes para resolver la *Querella* conforme a derecho. En ausencia de abuso de discreción o un acto administrativo que sea arbitrario, caprichoso o irrazonable, no amerita nuestra intervención aquí.

Como segundo señalamiento de error, BHC arguye que la OCIF se excedió en su rol de juez y parte en el procedimiento. El recurrente imputa prejuicio y parcialidad al Juez Administrativo por haber resuelto en su contra. A la misma vez, cuestiona el

---

[52] Regla 8.1 de la Oficina del Comisionado de Instituciones Financieras del Estado Libre Asociado de Puerto Rico, *supra.*
[53] Sección 3.8 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *supra.*
[54] Regla 8.1 de la Oficina del Comisionado de Instituciones Financieras del Estado Libre Asociado de Puerto Rico, *supra.*

proceder de la OCIF al presentar una moción de desestimación y arguye que la OCIF sirvió de "escudo" a Driven.

En primer lugar, no podemos hacer caso omiso que BHC presentó la *Querella* ante la OCIF por alegado incumplimiento al *Settlement Agreement,* un contrato de la cual la OCIF misma es parte. Resulta ineludible que la OCIF es parte indispensable de la *Querella.* BHC alegó que la OCIF intervino como parte de manera unilateral. Esto no es correcto. Ante la presentación de la *Querella* por BHC, el oficial examinador le concedió un término al querellado para contestar la *Querella* y otro término a aquellos que formaron parte del *Settlement Agreement,* siendo estos BIBTC y la OCIF, para expresarse por considerar estos partes indispensables, como lo exige nuestro estado de derecho vigente. Contrario a lo planteado por BHC, aquí no hubo actos unilaterales ni prejuicio.

En segundo lugar, BHC ampara sus planteamientos en la jurisprudencia de *Comisionado de Seguro v. Real Legacy Assurance Co.*[55] para establecer los requisitos a probarse en alegaciones de imparcialidad. Específicamente, el referido caso establece los criterios a evaluar cuando la parte perjudicada solicita la descalificación del funcionario que preside de los procedimientos. Empero, además de reiterar que la OCIF participó como parte y que el Juez Administrador resolvió en su contra, BHC entendió que hubo parcialidad por el mero hecho de que el Juez Administrador no acogió dos (2) hechos que le beneficiaban como determinaciones de hechos. Evidentemente, dichos argumentos son insuficientes conforme los criterios establecidos en *Comisionado de Seguro v. Real Legacy Assurance Co.*[56]. La realidad es que BHC no presentó evidencia alguna para sustentar sus alegaciones y nunca solicitó la descalificación del Juez Administrativo en los procedimientos. Por

---

[55] *Comisionado de Seguros v. Real Legacy Assurance Co., supra.*
[56] *Id.*

tanto, las serias imputaciones de imparcialidad y prejuicio son improcedentes e inmeritorias.

Como tercer señalamiento de error, BHC argumentó que la OCIF incidió al desestimar sumariamente la Querella basándose en hechos parciales y erróneos, sin verificar el alegado incumplimiento por el Síndico de la cláusula 2 del acuerdo transaccional.

Primero, BHC argumenta que la Resolución no cumplió con la obligación de analizar la moción de desestimación como una solicitud de sentencia sumaria y que tampoco abordó el argumento del Querellante de que existían hechos en controversia que lo impedían resolver sumariamente. Nuevamente, BHC se equivocó en su interpretación. Lo presentado por la OCIF fue una solicitud de desestimación y no una sentencia sumaria. El Juez Administrativo desestimó al amparo de la Regla 5 del Reglamento de la OCIF[57], cuya regla permite que, en cualquier momento por iniciativa propia o a solicitud de parte, se desestime una querella por inmeritoria, entre otras. De entender que se encontraba ante una solicitud de sentencia sumaria, el Juez Administrativo hubiese resuelto al amparo de la Regla 14 del Reglamento de la OCIF. Por ende, no corresponde tal análisis de interpretación y tampoco resolver sobre hechos en controversias.

En segundo lugar, BHC alega que el procedimiento para la selección de un *Escrow Agent* fue irregular e ilegal por no referirse al *Settlement Agreement*, por haberse comenzado antes de la vigencia de dicho acuerdo y por no haberse incluido a BHC en dicho procedimiento de selección antes y después de la vigencia del *Settlement Agreement*. Además, en adición a reiterar argumentos previos, BHC arguyó que el Juez Administrativo no analizó el

---

[57] Regla 5 del Reglamento Oficina del Comisionado de Instituciones Financieras del Estado Libre Asociado de Puerto Rico, *supra*, pág.

incumplimiento de la cláusula 2 del acuerdo transaccional por limitarse al requisito de no-objeción por parte de la OCIF.

En cuanto a la participación de BHC, la realidad del caso es que el *Settlement Agreement* no exige ni impone obligación alguna de incluir a BHC en el proceso de selección del *Escrow Agent* o el *Escrow Account*. Al contrario, se le concedió absoluta discreción a Driven, como Síndico de la liquidación, a escoger el *Escrow Agent* y el *Escrow Account* mientras que se le concedió a la OCIF el deber de emitir su determinación de no-objeción, en aras de velar por el cumplimiento de los requisitos estipulados. Por ende, no hubo incumplimiento alguno con el *Settlement Agreement* por no haberse incluido a BHC como participante de este procedimiento. Las disposiciones del contrato son claras y libre de ambigüedades, por lo que no deben menoscabarse y deben cumplirse fielmente al constituir ley entre las partes.

No existe obligación alguna para incluir a BHC en el proceso de selección ni de poder objetar dicha selección, pues, BHC renunció su derecho a seleccionar y objetar al consentir y firmar el *Settlement Agreement*. Dicho acuerdo transaccional claramente delega la facultad de seleccionar el *Escrow Agent* y *Escrow Account* a Driven y la capacidad de objetar a la OCIF. El requisito de la determinación de no-objeción de la OCIF en el acuerdo transaccional dispone: ***e. the selection of the Escrow Agent must be subject to OCIF´s prior supervisory determination of no-objection***.[58] Evidentemente, el propósito del requisito de no-objeción por la OCIF existe para la salvaguardar los otros requisitos, como es indicado en el acuerdo por el uso de "*prior supervisory determination*". De lo contrario, dicho requisito operaría en el vacío, pues, cualquiera de los otros contratantes pudiera objetar, cuya facultad fue expresamente delegada a la

---

[58] Véase apéndice del recurso KLRA202300487, pág. 294.

OCIF, detalle que BHC muy bien conocía al consentir y firmar dicho acuerdo transaccional. Por ello, BHC tenía que impugnar la determinación de la OCIF como agencia reguladora y alegar en su *Querella* que dicha actuación fue arbitraria, irrazonable o caprichosa, cosa que BHC no hizo.

Recordamos que las determinaciones de las agencias administrativas gozan de una presunción de legalidad y corrección que deben ser respetadas salvo se presente evidencia suficiente para invalidarla. El recurrente no proveyó la evidencia necesaria para invalidar la determinación de la OCIF. Por tanto, resulta forzoso concluir que el Juez Administrativo no abusó de su discreción y que la determinación no fue arbitraria, ilegal o irrazonable y es correcta en derecho.

IV

Por los fundamentos antes expresados, las cuales hacemos formar parte de este dictamen, se confirma la *Resolución* recurrida emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones